

FILED BY _____ D.C.

APR 0 4 2019

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO.: **19-20178-CR-ALTONAGA/GOODMAN**

**18 U.S.C. § 1349**
**18 U.S.C. § 1343**
**18 U.S.C. § 1341**
**18 U.S.C. § 1956(h)**
**26 U.S.C. § 7201**
**18 U.S.C. § 2**
**18 U.S.C. § 981(a)(1)(C)**
**18 U.S.C. § 982(a)(1)**
**26 U.S.C. § 7301**
**28 U.S.C. § 2461(c)**

**UNITED STATES OF AMERICA**

**vs.**

**ROBERT SHAPIRO,**
**DANE ROSEMAN,**
    **a/k/a "Dayne Roseman," and**
**IVAN ACEVEDO,**

        **Defendants.**
_____/

## INDICTMENT

The Grand Jury charges that:

### GENERAL ALLEGATIONS

At all times relevant to this Indictment:

#### The Corporations

1.      Woodbridge Group of Companies, LLC (d/b/a Woodbridge Wealth) ("Woodbridge") was a Sherman Oaks, California-based financial services company formed in 2014.

2.      Woodbridge Mortgage Investment Fund 1, LLC, Woodbridge Mortgage Investment Fund 2, LLC, Woodbridge Mortgage Investment Fund 3, LLC, Woodbridge Mortgage

Investment Fund 3A, LLC, Woodbridge Mortgage Investment Fund 4, LLC, Woodbridge Commercial Bridge Loan Fund 1, LLC, and Woodbridge Commercial Bridge Loan Fund 2, LLC (collectively, "Woodbridge Fund Companies") were Delaware companies formed between 2010 and 2015, all of which were created to act on behalf of Woodbridge.

3.     WMF Management, LLC ("WMF") was a California company formed in 2012 and created to act on behalf of Woodbridge.

4.     Woodbridge Structured Funding, LLC, a/k/a Woodbridge Structured Funding of Florida, LLC, ("WSF") was a Delaware company formed in 2009 and created to act on behalf of Woodbridge.

5.     Woodbridge Realty of Colorado ("Woodbridge Realty") was a Colorado company formed in 2014 and created to act on behalf of Woodbridge.

6.     Mercer Vine, Inc. ("Mercer Vine") was a California corporation formed in 2014 and created to act on behalf of Woodbridge.

7.     Riverdale Funding, LLC ("Riverdale") was a Delaware corporation formed in 2012 and created to act on behalf of Woodbridge.

8.     RS Protection Trust ("RS Trust") was created under Nevada law in 2013 and served as a holding trust for the assets of Woodbridge, WMF, WSF, and approximately two-hundred and seventy-two (272) other Woodbridge associated Delaware and Colorado companies.

9.     Devon Mason, Inc. ("Devon Mason") was a California company formed in 2013.

10.     Precise Investment Group, LLC ("Precise Investment") was a California company formed in 2014.

11.     iAlt Portfolio Management, LLC and iAlt Enhanced Income Portfolio I, LLC (d/b/a iAlternatives) (collectively, "iAlternatives") was a California company formed in 2015.

12.     Talon Opportunities, Inc. ("Talon") was a California-based company formed in 2016.

## The Defendants

13.     Defendant **ROBERT SHAPIRO** was the owner, president, and chief executive officer of Woodbridge. **SHAPIRO** additionally operated, directed and controlled the Woodbridge Fund Companies, WMF, WSF, Woodbridge Realty, Mercer Vine, Riverdale, and RS Trust.

14.     Defendant **DANE ROSEMAN, a/k/a "Dayne Roseman,"** served as the managing director of Woodbridge between January 2015 and December 2017.  **ROSEMAN**, among other things, sold Woodbridge securities, created Woodbridge marketing materials and sales scripts, and trained and supervised Woodbridge internal sales agents who sold Woodbridge securities. **ROSEMAN** additionally acted as a corporate officer for Precise Investment and Talon.

15.     Defendant **IVAN ACEVEDO** became a Woodbridge Structured Funding sales agent in 2009.  He later served as a sales agent for Woodbridge.  Between 2013 and December 2014, **ACEVEDO** served as the managing director of Woodbridge, and, among other things, sold Woodbridge securities, created Woodbridge marketing materials and sales scripts, and trained and supervised Woodbridge internal sales agents who sold Woodbridge securities.  **ACEVEDO** acted as an outside sales agent and the owner and operator of Devon Mason and iAlternatives between January 2015 to December 2017, during which time he sold Woodbridge securities.

## Definitions

16.     A "security" is a financial instrument that holds some type of monetary value. It represents an ownership position in a corporation via stock, bond, promissory note, or right to ownership as represented by a share, option, or unit.

17.     A "promissory note" is a financial instrument that contains a written promise by one party to pay another party a definite sum of money, either on demand or at a specified future date. A promissory note contains key terms pertaining to the debt and obligation, such as the principal amount, interest rate, maturity date, place of issuance, and issuer's signature.

18.     A "unit" is a type of security that represents an ownership interest in a company.

19.     A *"Ponzi"* or *"Ponzi* scheme" is an investment fraud scheme that involves the payment of claimed returns to existing investors from funds contributed by new investors. *Ponzi* scheme organizers often solicit new investors by promising to invest funds in opportunities claimed to generate high returns with little or no risk.  In many *Ponzi* schemes, the participants focus on attracting new money to make promised payments to earlier-stage investors to create the false appearance that investors are profiting from a legitimate business.  *Ponzi* schemes require a consistent flow of money from new investors to continue and tend to collapse when it becomes difficult to recruit new investors or when a large number of investors ask for their money back.

20.     A "phone room" or "boiler room" is a place or operation where salespeople use telephones, emails, and other means to contact potential investors in order to sell speculative and fraudulent securities through high-pressure sales tactics.

## COUNT 1
### Conspiracy to Commit Mail Fraud and Wire Fraud
### (18 U.S.C. § 1349)

1.     The General Allegations section of this Indictment is realleged and fully incorporated herein by reference.

2.     From in or around July 2012, through in or around December 2017, in Miami-Dade, Broward, and Palm Beach Counties, in the Southern District of Florida, and elsewhere, the defendants,

**ROBERT SHAPIRO,**
**DANE ROSEMAN,**
**a/k/a "Dayne Roseman," and**
**IVAN ACEVEDO,**

did willfully, that is, with the intent to further the objects of the conspiracy, and knowingly combine, conspire, confederate, and agree with each other and others known and unknown to the Grand Jury, to commit certain offenses against the United States, namely:

(a)    to knowingly and with the intent to defraud, devise, and intend to devise a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that the pretenses, representations, and promises were false and fraudulent when made, and for the purpose of executing such scheme and artifice to defraud, did knowingly cause to be delivered certain mail matter by the United States Postal Service and by private and commercial interstate carrier, according to the directions thereon, for the purpose of executing the scheme and artifice to defraud, in violation of Title 18, United States Code, Section 1341; and

(b)    to knowingly and with the intent to defraud, devise, and intend to devise a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that the pretenses, representations, and promises were false and fraudulent when made, and for the purpose of executing such scheme and artifice to defraud, did knowingly transmit and cause to be transmitted in interstate and foreign commerce, by means of wire communication, certain writings, signs, signals, pictures, and sounds, in violation of Title 18, United States Code, Section 1343.

## PURPOSE OF THE CONSPIRACY

3.    It was a purpose of the conspiracy for the defendants and their co-conspirators to defraud investors and obtain money and property by means of materially false and fraudulent pretenses, representations, and promises in connection with the sale of securities, in the form of promissory notes and units, by: (a) soliciting and causing others to solicit millions of dollars in investor funds under false and fraudulent pretenses, representations and promises; (b) intentionally failing to utilize investor funds and assets in the manner that the defendants, their co-conspirators and others had promised; (c) misappropriating and converting investor funds for their own benefit and the benefit of others without the knowledge and authorization of the investors; and (d) making false statements and engaging in other fraudulent activities designed to conceal the commission of the offense.

## MANNER AND MEANS OF THE CONSPIRACY

The manner and means by which the defendants and their co-conspirators sought to accomplish the objects and purpose of the conspiracy included, among others, the following:

4.    Beginning in or around July 2012 and continuing through at least in or around December 2017, **ROBERT SHAPIRO**, **DANE ROSEMAN**, **IVAN ACEVEDO**, and their co-conspirators primarily sold two types of securities to investors:  (a) short-term promissory notes that purportedly paid investors monthly interest that Woodbridge described as a First Position Commercial Mortgage ("FPCM") and (b) fund offerings with five-year terms ("Fund Offerings") that were sold to investors as equity "units" that also falsely and fraudulently claimed to pay investors interest payments.  The defendants claimed that both securities were "protected" by real property owned by third-party borrowers.

5.      Through telephone and in-person conversations, as well as the dissemination of sales material through mailings, wire communications such as emails and website displays, and other means, **ROBERT SHAPIRO**, **DANE ROSEMAN**, **IVAN ACEVEDO**, and their co-conspirators, promoted to potential investors these securities, and targeted elderly investors who had Individual Retirement Accounts.

6.      **ROBERT SHAPIRO** hired sales agents to solicit potential investors from the Woodbridge "phone room" that **DANE ROSEMAN** and **IVAN ACEVEDO** managed.  The phone room functioned as a "boiler room," and featured high-pressure sales tactics, deception, material misrepresentations, and investor manipulation. Through telemarketing, Woodbridge sales agents contacted potential investors located throughout the United States, and solicited, offered, and sold Woodbridge investments to them.

7.      **ROBERT SHAPIRO, DANE ROSEMAN, IVAN ACEVEDO** and their co-conspirators utilized a network of hundreds of external sales agents to solicit investments from the general public by way of television, radio, and newspaper advertisements, telemarketing campaigns, social media, websites, seminars, and in-person presentations.  At one point during the conspiracy, the Woodbridge network of external salespeople included over 600 people.

8.      From 2012 to 2017, **ROBERT SHAPIRO** paid more than $80 million in commissions to sales agents selling investments in Woodbridge securities.  **SHAPIRO** controlled Woodbridge's bank accounts and was the sole signatory on all of Woodbridge and its affiliates' bank accounts, hand-signing thousands of checks to sales agents and others.

9.      **ROBERT SHAPIRO, DANE ROSEMAN, IVAN ACEVEDO** and their co-conspirators directed investors to make payments for the Woodbridge investments by: (a)

transferring funds electronically via interstate wires to bank accounts **SHAPIRO** controlled; or (b) mailing checks to Woodbridge's corporate office in California.

### First Position Commercial Mortgage ("FPCM")

10.     **ROBERT SHAPIRO, DANE ROSEMAN, IVAN ACEVEDO**, and their co-conspirators' FPCM business model was to solicit money from investors and, in exchange, issue investors promissory notes reflecting purported loans to Woodbridge that paid monthly interest and matured in twelve to eighteen months.  The FPCM was issued by one of the Woodbridge Fund Companies.

11.     **ROBERT SHAPIRO, DANE ROSEMAN, IVAN ACEVEDO**, and their co-conspirators falsely and fraudulently represented that the FPCM was a "simple, safer and more secured opportunity for individuals to achieve their financial objectives."  They told investors that Woodbridge was making short-term, high-interest-rate loans to third-party commercial property owners that would be secured by real estate.  The defendants falsely and fraudulently claimed that Woodbridge's profits would be generated by the difference between the interest rate Woodbridge charged borrowers and the interest rate it paid investors.

12.     **ROBERT SHAPIRO, DANE ROSEMAN, IVAN ACEVEDO**, and their co-conspirators falsely and fraudulently represented to investors that they would have a "first-position" on the real property serving as collateral on the loan, which meant "you have priority over any other liens or claims on a property if the owner [borrower] defaults."

13.     **ROBERT SHAPIRO, DANE ROSEMAN, IVAN ACEVEDO**, and their co-conspirators falsely and fraudulently told investors that the third-party borrowers were bona-fide commercial property owners who could not obtain traditional loans and were willing to pay Woodbridge higher interest rates for short-term financing.  They falsely and fraudulently claimed

that (a) the third-party borrowers' real property was the collateral that formed the claimed "safety" and "security" in the Woodbridge FPCM, and (b) that investors' returns were generated by the third-party borrowers' interest and principal payments.

14.    Contrary to the representations of **ROBERT SHAPIRO, DANE ROSEMAN**, **IVAN ACEVEDO**, and their co-conspirators, Woodbridge made almost no loans to third-party borrowers, and there were almost no real properties belonging to third-party borrowers that were used as collateral. **SHAPIRO** actually used nearly all of the money received from FPCM investors to purchase real properties that he and his co-conspirators controlled, a material fact that **SHAPIRO, ROSEMAN, ACEVEDO**, and their co-conspirators failed to disclose to investors. For the **SHAPIRO**-owned properties, there were no loan payments and no interest payments to Woodbridge. Instead, **SHAPIRO** and his co-conspirators operated a *Ponzi* scheme, generating income primarily through new investor money and using the newly raised money to make scheduled payments to previous investors.

15.    **ROBERT SHAPIRO, DANE ROSEMAN**, and **IVAN ACEVEDO** instructed internal sales agents not to disclose the fact that **SHAPIRO,** through his many shell companies**,** actually owned the real properties, and instructed them to conceal this material fact from investors**. SHAPIRO, ROSEMAN, ACEVEDO,** and their co-conspirators directed sales agents that if investors asked about the ownership of the properties, to falsely and fraudulently represent that the third-party borrowers were "affiliates" of Woodbridge. If investors asked about the identity of the "affiliates," the defendants and their co-conspirators directed sales agents to falsely and fraudulently explain that the  "affiliates" were people that "had done business" with Woodbridge or **SHAPIRO**. Towards the end of the conspiracy, the defendants and their co-conspirators

allowed sales agents to disclose that "some" of the properties were owned by Woodbridge, still concealing the material fact that nearly all the properties were owned by **SHAPIRO**.

### Fund Offerings

16.     The Fund Offerings consisted of private placement investments with five-year terms. **ROBERT SHAPIRO, DANE ROSEMAN**, **IVAN ACEVEDO**, and their co-conspirators claimed that the units for the Fund Offerings had a greater rate of return than the FPCM notes.  For the Fund Offerings, the defendants and their co-conspirators falsely and fraudulently represented that the Woodbridge Fund Companies would pool money received from FPCM investors and, among other things, lend those funds to third-party borrowers for one to two years.  The defendants and their co-conspirators falsely and fraudulently told investors that the value in these units was based on the performance of Woodbridge's assets, including its ownership of FPCMs.

17.     In the offering memoranda for the Fund Offerings, the defendants falsely and fraudulently represented that investors' money would be used for mezzanine loans, construction loans, real estate acquisitions, and other real estate investments, notably, Woodbridge's FPCMs. In describing the Fund Offerings to investors, the defendants made some of the same false and fraudulent misrepresentations as those made to the FPCM investors discussed above.

18.     When FPCM promissory notes became due after their twelve to eighteen month terms, **ROBERT SHAPIRO, DANE ROSEMAN**, **IVAN ACEVEDO**, and their co-conspirators sought extensions and re-enrollment of FPCM investors, and frequently convinced FPCM investors to move their money into the longer-term five-year Fund Offerings.

19.     Because the Woodbridge Fund Companies were not receiving any interest payments and principal repayments on the **ROBERT SHAPIRO**-owned real property transactions, **SHAPIRO** used new investor funds to pay the interest and dividends owed to

previous Fund Investors.  Through these payments the defendants made it appear as if Woodbridge was loaning investor funds to actual third-party borrowers and creating FPCMs, when there were no third-party borrowers making any principal and interest payments to Woodbridge or the Fund Offerings.

20.     **ROBERT SHAPIRO** in 2017 began considering placing Woodbridge into bankruptcy.  However, **SHAPIRO, DANE ROSEMAN, IVAN ACEVEDO**, and their co-conspirators continued selling false and fraudulent investments in FPCM and Fund Offerings without disclosing to investors that Woodbridge was insolvent and on the verge of bankruptcy. **SHAPIRO, ROSEMAN, ACEVEDO**, and their co-conspirators received more than $52 million of investor money from October 2017 through the filing of Woodbridge's bankruptcy in December 2017.

21.     To induce investors to provide money to the defendants and their co-conspirators, the defendants and their co-conspirators made and caused others to make materially false and fraudulent statements to investors, and concealed and omitted to state, and caused others to conceal and omit to state, material facts to investors, including, among other things, the following:

### **Materially False Statements**

(a)     that FPCM investors had first position and priority over any other liens or claims on a property if the property owner defaulted;

(b)     that third-party borrowers paid interest on Woodbridge loans;

(c)     that Woodbridge revenue was generated by third-party borrowers paying interest on Woodbridge loans;

(d)     that Woodbridge "affiliates" were third-party borrowers and commercial real property owners;

(e)     that Woodbridge secured investor money with real property;

(f)     that Woodbridge would use investor money to originate loans to third-party borrowers;

(g)     that Woodbridge investments were "low risk," "simpler," "safe" and "conservative;" and

(h)     that the Woodbridge Fund Companies were profitable.

### Concealment and Omission of Material Facts

(i)     that new Woodbridge investor money was used to pay prior Woodbridge investors;

(j)     that **ROBERT SHAPIRO** used FPCM investor money to buy real property;

(k)     that **ROBERT SHAPIRO** owned nearly all of the real property at the center of every investment product offered by Woodbridge;

(l)     that several states issued cease-and-desist orders against Woodbridge and sales agents that sold Woodbridge securities, barring sales of Woodbridge securities; and

(m)     that Woodbridge was insolvent and on the verge of bankruptcy.

22.     **ROBERT SHAPIRO** and his co-conspirators paid approximately $2.5 million to **DANE ROSEMAN** and approximately $1.1 million to **IVAN ACEVEDO**.  **SHAPIRO** took approximately $35 million for his benefit, spending millions on personal expenditures, such as $3.1 million for chartering private planes and travel, $6.7 million on a personal home, $2.6 million on home improvements, $1.8 million on personal income taxes, $1.4 million to his ex-wife, and over $672,000 on luxury automobiles.

23.     On December 4, 2017, **ROBERT SHAPIRO** caused most of the Woodbridge companies to file Chapter 11 bankruptcy, which caused investors to suffer substantial losses, as

they were owed at least $961 million in principal. At least 2,600 of these investor victims invested their retirement savings, totaling approximately $400 million.

All in violation of Title 18, United States Code, Section 1349.

### COUNTS 2-6
### Mail Fraud
### (18 U.S.C. § 1341)

1. The General Allegations section of this Indictment is realleged and fully incorporated herein by reference.

2. From in or around July 2012, through in or around December 2017, in Miami-Dade, Broward, and Palm Beach Counties, in the Southern District of Florida, and elsewhere, the defendants,

### ROBERT SHAPIRO,
### DANE ROSEMAN,
### a/k/a "Dayne Roseman," and
### IVAN ACEVEDO,

did knowingly, and with the intent to defraud, devise, and intend to devise a scheme and artifice to defraud, and obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that the pretenses, representations, and promises were false and fraudulent when made, and for the purpose of executing such scheme and artifice did knowingly cause to be delivered certain mail matter by the United States Postal Service and by private and commercial interstate carrier, according to the directions thereon, in violation of Title 18, United States Code, Section 1341.

### PURPOSE OF THE SCHEME AND ARTIFICE

3. It was a purpose of the scheme and artifice for the defendants and their accomplices to defraud investors and obtain money and property by means of materially false and fraudulent pretenses, representations, and promises in connection with the sale of securities in the form of

promissory notes and units, by: (a) soliciting and causing others to solicit millions of dollars in investor funds under false pretenses, representations and promises; (b) intentionally failing to utilize investor funds and assets in the manner that the defendants, their co-conspirators and others had promised; (c) misappropriating and converting investor funds for their own benefit and the benefit of others without the knowledge or authorization of the investors; and (d) making false statements and engaging in other fraudulent activities designed to conceal the commission of the offense.

## MANNER AND MEANS OF THE SCHEME AND ARTIFICE

4.      Paragraphs 4 through 23 of the Manner and Means Section of Count 1 are realleged and fully incorporated herein as a description of the manner and means of the scheme and artifice.

## USE OF THE MAILS

5.      On or about the dates specified as to each count below, as specified for each defendant, for the purpose of executing and in furtherance of the scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that the pretenses, representations, and promises were false and fraudulent when made, did knowingly cause to be delivered certain mail matter by the United States Postal Service and by private and commercial interstate carrier, according to the directions thereon:

| COUNT | DEFENDANTS | APPROXIMATE DATE | DESCRIPTION OF MAILING |
|---|---|---|---|
| 2 | **ROBERT SHAPIRO and IVAN ACEVEDO** | September 22, 2014 | Investors C.Z. and J.Z's agent mailed check #273269 drawn from investor C.Z. and J.Z.'s TD Bank account in Fort Pierce, Florida, to Woodbridge in Sherman Oaks, California |

| COUNT | DEFENDANTS | APPROXIMATE DATE | DESCRIPTION OF MAILING |
|---|---|---|---|
| 3 | **ROBERT SHAPIRO and DANE ROSEMAN, a/k/a "Dayne Roseman"** | March 19, 2015 | Investor M.W. mailed check #1341 drawn from investor M.W.'s Regions Bank account in Boca Raton, Florida, to Woodbridge in Sherman Oaks, California |
| 4 | **ROBERT SHAPIRO and DANE ROSEMAN, a/k/a "Dayne Roseman"** | April 15, 2015 | Investor L.S.'s agent mailed check #108 drawn from investor L.S.'s Merrill Lynch account in Wellington, Florida to Woodbridge in Sherman Oaks, California |
| 5 | **ROBERT SHAPIRO, and DANE ROSEMAN, a/k/a "Dayne Roseman"** | March 13, 2017 | Investor D.J. mailed check #201 drawn from investor D.J.'s Wells Fargo account in Jensen Beach, Florida to Woodbridge in Sherman Oaks, California |
| 6 | **ROBERT SHAPIRO, and DANE ROSEMAN, a/k/a "Dayne Roseman"** | August 25, 2017 | Investor H.B. mailed check #1003 drawn from investor D.J.'s Fidelity account in Delray Beach, Florida to Woodbridge in Sherman Oaks, California |

In violation of Title 18, United States Code, Sections 1341 and 2.

## COUNTS 7-8
### Wire Fraud
### (18 U.S.C. § 1343)

1.      Paragraphs 1 through 8, 10, 12 through 14, and 16 through 20 of the General Allegations section of this Indictment are realleged and fully incorporated herein by reference.

2.      From in or around July 2012, through in or around December 2017, in Miami-Dade Broward, and Palm Beach Counties, in the Southern District of Florida, and elsewhere, the defendants,

**ROBERT SHAPIRO and
DANE ROSEMAN,**

did knowingly, and with the intent to defraud, devise and intend to devise a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that the pretenses, representations, and promises were false and fraudulent when made, and for the purpose of executing such scheme and artifice to defraud, did knowingly transmit and cause to be transmitted in interstate and foreign commerce, by means of wire communication, certain writings, signs, signals, pictures and sounds, in violation of Title 18, United States Code, Section 1343.

## PURPOSE OF THE SCHEME AND ARTIFICE

3.      It was a purpose of the scheme and artifice for the defendants and their accomplices to defraud investors and obtain money and property by means of materially false and fraudulent pretenses, representations, and promises in connection with the sale of securities, in the form of promissory notes and units, by: (a) soliciting and causing others to solicit millions of dollars in investor funds under false pretenses, representations and promises; (b) intentionally failing to utilize investor funds and assets in the manner that the defendants, their co-conspirators and others had promised; (c) misappropriating and converting investor funds for their own benefit and the benefit of others without the knowledge or authorization of the investors; and (d) making false statements and engaging in other fraudulent activities designed to conceal the commission of the offense.

## MANNER AND MEANS OF THE SCHEME AND ARTIFICE

4.      Paragraphs 4 through 23 of the Manner and Means Section of Count 1, only as to defendant **ROBERT SHAPIRO** and **DANE ROSEMAN, a/k/a "Dayne Roseman,"** are realleged and fully incorporated herein as a description of the manner and means of the scheme and artifice.

## USE OF THE WIRES

5.      On or about the dates specified as to each count below, as specified for each defendant, for the purpose of executing and in furtherance of the scheme and artifice to defraud and to obtain money and property by means of materially and false and fraudulent pretenses, representations, and promises, knowing the pretenses, representations, and promises were false and fraudulent when made, did transmit and caused to be transmitted by wire some communication in interstate commerce to help carry out the scheme to defraud, according to the directions thereon:

| COUNT | DEFENDANTS | APPROXIMATE DATE | DESCRIPTION OF WIRE COMMUNICATION |
|---|---|---|---|
| 7 | **ROBERT SHAPIRO and DANE ROSEMAN, a/k/a "Dayne Roseman,"** | December 22, 2016 | Investor M.W., located in Boca Raton, Florida wired $250,000 from his Regions Bank account in Florida to a Woodbridge Mortgage Investment Fund 3A, LLC Comerica Bank account in Sherman Oaks, California |
| 8 | **ROBERT SHAPIRO and DANE ROSEMAN, a/k/a "Dayne Roseman,"** | July 5, 2017 | Investor D.D., located in Fort Pierce, Florida wired $50,000 from a Provident Trust Group LLC account in Nevada to Woodbridge Mortgage Investment Fund 4, LLC Comerica Bank account in Sherman Oaks, California |

In violation of Title 18, United States Code, Sections 1343 and 2.

## COUNT 9
**Conspiracy to Commit Money Laundering**
**(18 U.S.C. § 1956(h))**

From in or around July 2012, through in or around December 2017, in Miami-Dade Broward, and Palm Beach Counties, in the Southern District of Florida, and elsewhere, the defendant,

**ROBERT SHAPIRO,**

did willfully, that is, with the intent to further the object of the conspiracy, and knowingly combine, conspire, confederate, and agree with others known and unknown to the Grand Jury, to violate Title 18, United States Code, Section 1956(a)(1)(B)(i), that is, to knowingly conduct a financial transaction affecting interstate and foreign commerce, which transaction involved the proceeds of specified unlawful activity, knowing that the property involved in the financial transaction represented the proceeds of some form of unlawful activity, and knowing that such transaction was designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership, and the control of the proceeds of specified unlawful activity.

It is further alleged that the specified unlawful activity is mail fraud and wire fraud, in violation of Title 18, United States Code, Sections 1341 and 1343.

All in violation of Title 18, United States Code, Section 1956(h).

### COUNT 10
**Evasion of Payment of Federal Income Taxes**
**(26 U.S.C. § 7201)**

1.　　From in or around January 2002 through the present, **ROBERT SHAPIRO**, in Broward County, in the Southern District of Florida, and elsewhere, willfully attempted to evade and defeat the payment of income tax due and owing by him to the United States of America, for the calendar years 2000, 2001, 2002, 2003, 2004, 2005, with total tax due and owing of $6,061,134, by committing the following affirmative acts, among others:

a.　　filing false and fraudulent IRS Forms 1040, U.S. Individual Income Tax Returns, with the IRS understating his total income and tax due and owing;

b.　　creating RS Trust in the State of Nevada on or about June 25, 2013, to conceal his assets and income;

c.     transferring approximately $60,537,176 from RS Trust to nominee bank accounts controlled by him;

d.     creating and using nominee owner bank accounts to pay personal expenses totaling approximately $27,331,075, including the purchase and renovation of his home, luxury airline travel, wine, entertainment, luxury vehicles, and jewelry; and

e.     filing a false and fraudulent IRS Form 656-L, "Offer in Compromise (Doubt As To Liability)," with the IRS in Plantation Florida, on or about March 13, 2017, wherein he lied about his physical home address on the signed form under penalty of perjury.

In violation of Title 26, United States Code, Section 7201.

## FORFEITURE
### (18 U.S.C. §§ 981(a)(1)(C)), 982(a)(1) and 26 U.S.C. § 7301)

1.     The allegations of this Indictment are realleged, and by this reference fully incorporated herein for the purpose of alleging forfeiture to the United States of certain property in which the defendants, **ROBERT SHAPIRO, DANE ROSEMAN, a/k/a "Dayne Roseman,"** and **IVAN ACEVEDO**, have an interest.

2.     Upon conviction of a violation of Title 18, United States Code, Sections 1341, 1343 and/or 1349, as alleged in this Indictment, the defendants, **ROBERT SHAPIRO, DANE ROSEMAN, a/k/a "Dayne Roseman,"** and **IVAN ACEVEDO**, shall each forfeit to the United States, any property, real or personal, which constitutes or is derived from proceeds traceable to such violations, pursuant to Title 18, United States Code, Section 981(a)(1)(C), which is made applicable by Title 28, United States Code, Section 2461(c).

3.     Upon conviction of a violation of Title 18, United States Code, Section 1956, as alleged in this Indictment, the defendant, **ROBERT SHAPIRO**, shall forfeit to the United States,

any property, real or personal, involved in such violation, and any property traceable to such property, pursuant to Title 18, United States Code, Section 982(a)(1).

4.      Upon conviction of a violation of Title 26, United States Code, Section 7201, as alleged in this Indictment, the defendant, **ROBERT SHAPIRO**, shall forfeit to the United States, any taxable articles, raw materials, equipment, packages, and conveyances as defined in Title 26, United States Code, Section 7301, pursuant to Title 26, United States Code, Section 7301, which is made criminally applicable by Title 28, United States Code, Section 2461(c).

5.      The property subject to forfeiture includes, but is not limited to:

(i)      A sum equal in value to the proceeds traceable to the fraudulent scheme alleged in violation of Title 18, United States Code, Sections 1341, 1343, and 1349, the property involved in the violations of Title 18, United States Code, Section 1956 alleged in the Indictment, and the taxable articles, raw materials, equipment, packages, and conveyances defined in Title 26, United States Code, Section 7301, which is approximately $1.3 billion in U.S. currency and which may be sought as a forfeiture money judgment;

(ii)      All assets on deposit in account number 4040774877 at Alpine Bank, held in the name of Carbondale Basalt Owners LLC;

(iii)      All assets on deposit in account number 8900003424 at Alpine Bank, held in the name of Davana Sherman Oaks Owners LLC;

(iv)      All assets on deposit in account number 8970196989 at Alpine Bank, held in the name of Midland Loop Enterprises LLC;

(v)      All assets on deposit in account number 36044043514 at Capital One Bank, held in the name of Jeri Shapiro;

(vi)      All assets on deposit in account number 80-27009771 at East West Bank,

held in the name of Davana Primrose Ventures LLC;

(vii)   All assets on deposit in account number 20-27007984 at East West Bank, held in the name of Jeri L Shapiro;

(viii)   All assets on deposit in account number 80-27010068 at East West Bank, held in the name of Reliance Marketing Solutions LLC;

(ix)   All assets on deposit in account number 80-27010381 at East West Bank, held in the name of Settlement Depot LLC;

(x)   All assets on deposit in account number X96-267462 at Fidelity Cash Management, held in the name of Jeri Shapiro;

(xi)   All assets on deposit in account number 197148628 at Regions Bank, held in the name of Commercial Bridge Lenders LLC;

(xii)   All assets on deposit in account number 2010131932 at Timberline Bank, held in the name of Golden Mesa Ventures LLC;

(xiii)   All assets on deposit in account number 2010131940 at Timberline Bank, held in the name of  Golden Primrose Ventures LLC;

(xiv)   All assets on deposit in account number 157514954443 at US Bank, held in the name of Jeri Shapiro;

(xv)   One (1) 18-karat, white gold, bangle bracelet, with 550 round diamonds (12.50 carats) and 1,434 black diamonds (24.92 carats);

(xvi)   One (1) pair of 18-karat, white gold, drop earrings, with 1,344 round-cut diamonds (13.80 carats);

(xvii)   One (1) pair of 18-karat, white gold, button earrings, with 162 round diamonds (13.89 carats);

(xviii)  One (1) pair of 18-karat, white gold, drop earrings with 99 yellow sapphires (1.10 carats), 117 tsavorites (1.18 carats), 125 blue sapphires (1.38 carats), 124 blue diamonds (1.36 carats), 120 amethysts (1.24 carats), 120 pink sapphires (1.18 carats), and 125 orange sapphires (1.26 carats);

(xix)   One (1) pair of 18-karat, white gold, drop earrings with 22 emeralds (35.53 carats) and round-cut diamonds (7.18 carats);

(xx)    One (1) pair of 18-karat, rose gold, golden pearl earrings with round-cut diamonds (.39 carat);

(xxi)   One (1) pair of 18-karat, rose gold, drop earrings with round-cut diamonds (.62 carat);

(xxii)  One (1) pair of 18-karat, rose gold, drop earrings with rubies (38.90 carats);

(xxiii)  One (1) emerald and diamond ring;

(xxiv)  One (1) platinum ring with certified Colombia emerald-cut emerald (9.54 carats), eight trapezoid-cut diamonds (2.09 carats), and 166 round-cut diamonds (1.42 carats);

(xxv)   One (1) pair of 18-karat, white gold earrings with multi-color pearls (11.8-15.5mm) and round-cut diamonds (.98 carat);

(xxvi)  One (1) platinum ring with oval-cut ruby (10.91 carats), two trapezoid diamonds (1.19 carats), and 70 round-cut diamonds (2.08 carats);

(xxvii) One (1) 18-karat, rose gold, bangle bracelet with round diamonds (1.50 carats);

(xxviii) One (1) 18-karat, white gold, bangle bracelet with round diamonds (1.5 carats);

(xxix)  One (1) pair of 14-karat, white gold, drop earrings with two black diamonds

(61.81 carats), two icy grey diamonds (23.92 carats), two rose-cut diamonds (.36 carat), and 266 round diamonds (1.63 carats);

(xxx)   One (1) 18-karat, yellow gold ring with 13 radiant-cut diamonds (13.83 carats); and

(xxxi)  One (1) 1969 Mercury convertible, bearing Vehicle Identification Number ("VIN") 9F92M565911.

6.     If any property subject to forfeiture, as a result of any act or omission of a defendant,

    a.   cannot be located upon the exercise of due diligence,

    b.   has been transferred or sold to, or deposited with, a third party,

    c.   has been placed beyond the jurisdiction of the Court,

    d.   has been substantially diminished in value, or

    e.   has been commingled with other property which cannot be divided without difficulty,

the United States shall be entitled to forfeiture of substitute property under the provisions of Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1) and Title 28, United States Code, Section 2461(c).

All pursuant to Title 18, United States Code, Sections 981(a)(1)(C), 982(a)(1) and Title 26, United States Code, Section 7201, and the procedures set forth at Title 21, United States Code, Section 853, as incorporated by Title 18, United States Code, Section 982(b)(1) and Title 28, United States Code, Section 2461(c).

A TRUE BILL

FOREPERSON

ARIANA FAJARDO ORSHAN
UNITED STATES ATTORNEY

ROGER CRUZ
ASSISTANT UNITED STATES ATTORNEY

MICHAEL R. SHERWIN
ASSISTANT UNITED STATES ATTORNEY

24

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA

v.

ROBERT SHAPIRO, et al.,

_____ Defendants.   /

CASE NO._____

## CERTIFICATE OF TRIAL ATTORNEY*

**Superseding Case Information:**

**Court Division:** (Select One)

| | | | | |
|---|---|---|---|---|
| ✓ | Miami | ___ | Key West | |
| ___ | FTL | ___ | WPB | ___ FTP |

New defendant(s)          Yes ____   No ____
Number of new defendants     ____
Total number of counts       ____

1.   I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2.   I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. Section 3161.

3.   Interpreter:     (Yes or No)     No
     List language and/or dialect     _____

4.   This case will take __21__ days for the parties to try.

5.   Please check appropriate category and type of offense listed below:

     (Check only one)                                        (Check only one)

| | | | | | |
|---|---|---|---|---|---|
| I | 0 to 5 days | _____ | Petty | _____ |
| II | 6 to 10 days | _____ | Minor | _____ |
| III | 11 to 20 days | _____ | Misdem. | _____ |
| IV | 21 to 60 days | ✓ | Felony | ✓ |
| V | 61 days and over | | | |

6.   Has this case previously been filed in this District Court?     (Yes or No)     No ____
     If yes: Judge _____     Case No. _____
     (Attach copy of dispositive order)
     Has a complaint been filed in this matter?     (Yes or No)     No ____
     If yes: Magistrate Case No. _____
     Related miscellaneous numbers: _____
     Defendant(s) in federal custody as of _____
     Defendant(s) in state custody as of _____
     Rule 20 from the District of _____

     Is this a potential death penalty case? (Yes or No)     No ____

7.   Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to August 9, 2013 (Mag. Judge Alicia O. Valle)?     Yes ____   No ✓

8.   Does this case originate from a matter pending in the Northern Region U.S. Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek Maynard)?     Yes ____   No ✓

_____
ROGER CRUZ
ASSISTANT UNITED STATES ATTORNEY
Florida Bar No.: 157971

*Penalty Sheet(s) attached

REV 8/13/2018

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## PENALTY SHEET

**Defendant's Name**: **ROBERT SHAPIRO**

**Case No**:

Count # 1:

Conspiracy to Commit Mail and Wire Fraud

Title 18, United States Code, Section 1349

**\*Max. Penalty:**        Twenty (20) Years' Imprisonment

Counts # 2-6:

Mail Fraud

Title 18, United States Code, Section 1341

**\*Max. Penalty:**        Twenty (20) Years' Imprisonment as to Each Count

Counts # 7-8:

Wire Fraud

Title 18, United States Code, Section 1343

**\*Max. Penalty:**        Twenty (20) Years' Imprisonment as to Each Count

Count # 9:

Conspiracy to Commit Money Laundering

Title 18, United States Code, Section 1956(h)

**\*Max. Penalty:**        Twenty (20) Years' Imprisonment

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

**Defendant's Name:** **ROBERT SHAPIRO**

**Case No**: _____

Count # 10:

Evasion of Payment of Federal Income Taxes

Title 26, United States Code, Section 7201

**\*Max. Penalty:**      Five (5) Years' Imprisonment

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## PENALTY SHEET

**Defendant's Name: DANE ROSEMAN, a/k/a "Dayne Roseman"**

**Case No**: _____

Count # 1:

Conspiracy to Commit Mail and Wire Fraud

Title 18, United States Code, Section 1349

**\*Max. Penalty:**      Twenty (20) Years' Imprisonment

Counts # 3-6:

Mail Fraud

Title 18, United States Code, Section 1341

**\*Max. Penalty:**      Twenty (20) Years' Imprisonment

Counts # 7-8:

Wire Fraud

Title 18, United States Code, Section 1343

**\*Max. Penalty:**      Twenty (20) Years' Imprisonment

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

<u>PENALTY SHEET</u>

**Defendant's Name:** **IVAN ACEVEDO**

**Case No**:

Count # 1:

Conspiracy to Commit Mail and Wire Fraud

Title 18, United States Code, Section 1349

**\*Max. Penalty:**       Twenty (20) Years' Imprisonment

Count # 2:

Mail Fraud

Title 18, United States Code, Section 1341

**\*Max. Penalty:**       Twenty (20) Years' Imprisonment

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**