UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 19-20178-CR-CMA

UNITED STATES OF AMERICA

vs.

ROBERT SHAPIRO,
DANE ROSEMAN,
 a/k/a "Dayne Roseman," and
IVAN ACEVEDO ,
 Defendants.
_____/

## GOVERNMENT'S MOTION TO RECONSIDER SEVERANCE OF DEFENDANT ROBERT SHAPIRO OR, IN THE ALTERNATIVE, TO CONTINUE TRIAL

The United States of America, by and through the undersigned Assistant United States Attorneys, hereby moves the Court to reconsider its decision to set trial as to the lead defendant in this matter, Robert Shapiro ("Defendant Shapiro"), for June 10, 2019 (D.E. 66), thereby severing his case from that of the other two co-defendants charged in the same indictment, Dane Roseman ("Defendant Roseman") and Ivan Acevedo ("Defendant Acevedo"), for whom the Court agreed to continue trial until February 18, 2020 (D.E. 64).  The government anticipates that it will call at least approximately 60 witnesses to testify in its case-in-chief, nearly all of whom will be traveling considerable distances to Miami.  Furthermore, the government estimates that its presentation of evidence will take approximately a month.  To the extent that the Court is not inclined to reconsider its decision to sever Defendant Shapiro, in the alternative, the government seeks a continuance of his trial date to August 5, 2019.  Defendant's initial appearance in this matter occurred less than a month ago, on May 9, 2019.  A continuance is in the interests of justice, and moreover, as of the date of this filing, approximately 55 days remain under Shapiro's speedy trial clock.  Thus, for the reasons set forth below, the government respectfully requests that its motion be granted.

## I.     FACTUAL BACKGROUND

For more than five years, Defendant Shapiro spearheaded a $1.3 billion Ponzi scheme through a network of entities, including Woodbridge Group of Companies, LLC (collectively, "Woodbridge"), that involved the sale of securities to more than 8,000 people. The fraud scheme ran from July 2012, through December 4, 2017, when Woodbridge filed for Chapter 11 bankruptcy and defaulted on its obligations to investors. The scheme was massive in terms of its financial magnitude, duration, and the volume of victims, many of whom are elderly and dispersed across the country. In sum, Defendant Shapiro and his co-conspirators, including co-defendants Roseman and Acevedo, made material misrepresentations and used high-pressure sales tactics to trick victims into investing their funds. Based on Woodbridge's lies and omissions, the victims believed that their money would be used to finance mortgages to third-party property owners. In truth, however, Woodbridge used investor funds to pay Defendant Shapiro and entities he controlled; concealed the fact that Shapiro controlled the vast majority of the properties; and kept the scheme going with Ponzi payments, *i.e.*, by using money from new investors to pay off the old ones.

## II.    PROCEDURAL HISTORY

On April 4, 2019, a grand jury in the Southern District of Florida returned an indictment charging Defendants Shapiro, Roseman, and Acevedo with one count of conspiracy to commit mail fraud and wire fraud, in violation of Title 18, United States Code, Section 1349 (Count 1); Defendants Shapiro and Acevedo with one count of mail fraud, in violation of Title 18, United States Code, Section 1341 (Count 2); Defendants Shapiro and Roseman with four additional counts of mail fraud, in violation of Title 18, United States Code, Section 1341 (Counts 3 through 6); Defendants Shapiro and Roseman with two counts of wire fraud, in violation of Title 18, United States Code, Section 1343 (Counts 7 through 8); Defendant Shapiro with one count of conspiracy

to commit money laundering, in violation of Title 18, United States Code, Section 1956(h) (Count 9); and Defendant Shapiro with one count of evasion of payment of federal income taxes, in violation of Title 26, United States Code, Section 7201 (Count 10).  D.E. 3, 11 (indictment unsealed on April 15, 2019).  Eight of the ten counts charged in the indictment name Defendant Shapiro and at least one of his co-defendants, while only two counts exclusively name Shapiro.

On April 11, 2019, Defendant Shapiro was arrested by Federal Bureau of Investigation ("FBI") and Internal Revenue Service ("IRS") agents at his residence in Sherman Oaks, California. He was ordered detained the same day by a United States Magistrate Judge in the Central District of California, although he was granted leave to, and later did, seek reconsideration of that order. Shapiro was then transported to Miami and had his initial appearance in Magistrate Court on May 9, 2019 (D.E. 39).  Following a detention hearing on May 15, 2019, United States Magistrate Judge Edwin G. Torres ordered that he remain detained based on risk of flight, in accordance with the factors set forth in 18 U.S.C. § 3142(g) (*see* D.E. 50) (holding, *inter alia*, that "[w]e find based on a preponderance of the evidence that Defendant would pose a serious flight risk if released because [he] has substantial assets, extensive foreign travel, a pilot's license, and ties to Israel.").

The discovery materials in this case are voluminous and include, but are not limited to, emails; audio recordings; investigative and interview reports; bank records; photographs; and business records.  After prevailing on its motion for an extension of time to file its initial discovery response on May 13, 2019 (D.E. 41), the government produced discovery, in electronic format, to defendants starting on May 24, 2019, and made the balance of discovery available for inspection.

On May 28, 2019, Defendant Shapiro moved to revoke his pretrial detention based upon an argument that the government should have provided *Jencks* material at an earlier juncture (D.E. 58).  That motion remains pending, and the government's response is due by June 11, 2019.  *Id.*

On June 3, 2019, at the first calendar call[1] convened in this matter, the Court inquired of all parties as to the status of the case. Counsel for each defendant, including Defendant Shapiro, expressed that they had received at least two thumb drives from the government. Counsel for Defendant Shapiro also represented that, in addition to the two thumb drives, the government provided him with one disk; and furthermore, that he had provided a five-terabyte drive to the government to facilitate transfer of additional discovery items made available for inspection. Defendant Shapiro's counsel also indicated that, as a result of technological/encryption issues, the process of reviewing and transferring discovery had been difficult. Due to those difficulties, it appeared that he and Shapiro had not been able to successfully access the discovery materials.

In response to questioning regarding trial scheduling, Defendant Roseman requested a continuance of nine to twelve months based on the volume of discovery and his estimate for time needed to prepare a defense. When the Court queried whether all parties were in agreement with the requested continuance, Defendant Shapiro's counsel indicated that, despite the discovery issues he had described, he would not join in the request based upon his client's refusal to waive his rights under the Speedy Trial Act. The Court set Roseman and Acevedo for trial on February 18, 2020, and severed Defendant Shapiro by setting his trial for June 10, 2019 (D.E. 64, 66).

### III.   ARGUMENT

#### A.  The Court Should Reconsider Its Decision to Sever Defendant Shapiro.

##### i.  Legal Standard: Severance

The Supreme Court has explained that "[j]oint trials play a vital role in the criminal justice system," and "generally serve the interests of justice by avoiding inconsistent verdicts and enabling

---

[1] On April 29, 2019, prior to Defendant Shapiro's initial appearance in this District, the Court set a trial date of June 10, 2019 for all three defendants (D.E. 22). Defendants Acevedo and Roseman first appeared in this District on April 25 and April 26, 2019 (D.E. 20, 25), respectively.

more accurate assessment of relative culpability—advantages which sometimes operate to the defendant's benefit. Even apart from these tactical considerations, joint trials generally serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts . . . ." *Richardson v. Marsh*, 481 U.S. 200, 209–10 (1987).

Indeed, "[t]here is a preference in the federal system for joint trials of defendants who are indicted together." *Zafiro v. United States*, 506 U.S. 534, 537 (1993). The Eleventh Circuit has held that this preference is particularly strong where, as here, the charges include conspiracy. *See, e.g.*, *United States v. Castillo-Valencia*, 917 F.2d 494, 498 (11th Cir. 1990) ("The general rule in this circuit is that defendants who are jointly indicted should be tried together, and this rule has been held to be particularly applicable to conspiracy cases."); *accord United States v. Knowles*, 66 F.3d 1146, 1158 (11th Cir. 1995). In assessing the propriety of severance, the trial court "must balance the right of the defendant to a fair trial against the public's interest in the efficient and economic administration of justice." *United States v. Simon*, 839 F.2d 1461, 1472 (11th Cir. 1988); *see also United States v. Hill*, 643 F.3d 807, 828 (11th Cir. 2011); *United States v. Cross*, 928 F.2d 1030, 1037 (11th Cir. 1991). Severance is only proper where denial would cause "compelling prejudice against which the district court [can] offer[] no protection." *United States v. Dowd*, 451 F.3d 1244, 1249 (11th Cir. 2006) (citations omitted) (regarding severance of counts); *see also, e.g.*, *United States v. Acosta*, No. 12-20157-CR, 2012 WL 3887534, at *3-5 (S.D. Fla. Sept. 7, 2012) (Rosenbaum, D.J.) (unpublished) (denying severance where charges purported to involve related proof, defendant failed to show prejudice, and based upon public interest).

Yet, the district court enjoys broad discretion. Denial of a motion for severance is reviewed only for an abuse of discretion. *Hill*, 643 F.3d at 828 (affirming denial of severance in multi-defendant mortgage fraud case, where charges included fraud offenses and money laundering).

### ii. Judicial Economy and the Public Interest Favor a Joint Trial.

Here, judicial economy and the public interest strongly weigh in favor of a joint trial of all three defendants. Only two of the ten counts in the indictment exclusively name Defendant Shapiro, whereas the other eight counts pertain to Shapiro and at least one or both of his co-defendants. Particularly given the nature of the conspiracy charged in Count 1, and the status of Roseman as Shapiro's right-hand man, there is significant overlap in the government's proof as to each defendant's guilt, in terms of witnesses as well as exhibits. The government estimates that a trial of any of the current defendants, and especially, Defendant Shapiro, would be virtually the same length as a trial against all three defendants, which is to say, a potentially month-long trial involving at least approximately 60 witnesses. The most efficient path, in terms of judicial economy, impact upon civilian witnesses, and government resources, would be to convene a joint trial of all defendants.

Notwithstanding the government's pretrial investigation and desire to proceed to trial as expeditiously as possible, this is a complex matter in which diligent trial preparation will take significant time. The Court may overrule a defendant's objection to continuance of a trial date where, as here, the ends of justice are served by taking such action. 18 U.S.C. §§ 3161(h)(7)(A), 3161(h)(7)(B)(i)-(ii); *United States v. Mathis*, 96 F.3d 1577, 1580-81 (11th Cir. 1996) (deeming trial court's decision to grant continuance over defendant's objection proper based on interests of justice); *see also, e.g.*, *United States v. Lynch*, 726 F.3d 346, 356–57 (2d Cir. 2013) (collecting cases); *United States v. Hatfield*, 466 F. App'x 775, 777 (11th Cir. 2012) ("Hatfield's primary objection to the continuance was that the defendant himself did not consent to it. However, the plain language of the Speedy Trial Act makes clear that a continuance requested by defendant's counsel, if serving the ends-of-justice, can be excluded from the Speedy Trial Act calculation.");

*United States v. Gates*, 709 F.3d 58, 65 (1st Cir. 2013) (noting that "a defendant's lawyer may seek a continuance and the concomitant exclusion of time for Speedy Trial Act purposes without first securing the defendant's personal consent."); *United States v. Herbst*, 666 F.3d 504, 510 (8th Cir. 2012) ("We agree with the Sixth Circuit that the plain language of section 3161(h)(7)(A) 'does not require a defendant's consent to the continuance if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial.'").

Given the preference that defendants charged together be tried together, the public's interest in seeing justice done in this matter and conserving resources, and the substantial burden that two lengthy trials involving the same subject matter will impose upon civilian witnesses and victims, the government respectfully requests that the Court reconsider its decision to sever Shapiro, and to set his trial for February 18, 2020, with his two co-defendants.

### B. **In the Alternative, There is Good Cause to Continue Defendant Shapiro's Trial Date to the Trial Period Beginning on August 5, 2019.**

To the extent that the Court severed Defendant Shapiro's case based upon his refusal to waive time under the Speedy Trial Act, 18 U.S.C. § 3161, the government respectfully submits that, at the very least, a continuance of his trial to August 5, 2019, a date which is still prior to the expiration of the seventy days allotted under the Speedy Trial Act, is in the interests of justice.

#### i. **The Speedy Trial Act, and Case Law Construing It, Authorizes the Court to Grant A Continuance over Defendant's Objection and to Exclude the Resulting Delay from the Seventy-Day Speedy Trial Clock.**

The plain terms of the Speedy Trial Act support granting a continuance, and excluding any resulting delay from the seventy-day speedy trial clock, where, as here, the case is "unusual" and "complex," and "it would be unreasonable to expect adequate preparation . . . for the trial itself within the time limits established by [the Speedy Trial Act]." *See* 18 U.S.C. § 3161(h)(7)(B)(ii);

*id.* § 3161(h)(7)(A) (noting that the Speedy Trial Act authorizes exclusion of periods of delay resulting from a judge granting a motion to continue sought by the defendant, the government, or on the court's own motion, "if the judge granted such continuance on the basis of . . . findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial"); *see also Hatfield*, 466 F. App'x at 777 (deeming concern for scheduling adequate preparation and trial time for a complex case a relevant consideration).

Here, in spite of his and his counsel's stated objection, it would be unreasonable to expect that Defendant Shapiro would be effectively represented or adequately prepared for trial by June 10, 2019, in light of, among other things, counsel's representation on the record on June 3, 2019, that he had not as of that date been able to review his client's discovery. Case law construing the Speedy Trial Act recognizes that permitting a defendant more time to prepare for trial – even if a continuance is granted over the defendant's objection – serves the interests of justice if it enables defense counsel to provide effective representation. *See United States v. Thomas*, 356 F. Supp. 2d 1259, 1261 (M.D. Ala. 2004) ("[T]he court concludes, for two reasons, that the ends of justice served by ordering a continuance outweigh the best interest of the public and [the defendant] in a speedy trial: (1) an additional ten counts were added just three business days before trial and (2) the fingerprint analysis has yet to be thoroughly completed. For both reasons, additional time is needed so that the defense may have 'reasonable time necessary for effective preparation.'" (citing 18 U.S.C. § 3161(h)(8)(B)(iv)); *see also Mathis*, 96 F.3d 1577, 1580 (11th Cir. 1996) (in complex narcotics case, approving court's decision to grant continuance over defendant's objection, as court reasonably found that the ends of justice served by ordering a continuance to allow defendant more time for preparation outweighed the best interest of the public and defendant in a speedy trial).

The government's requested continuance will also serve the interests of justice because it will enable the government to better prepare for trial. This is a complex matter involving thousands of civilian victims and coordination of witness schedules for individuals located across the country. Based upon Defendant Shapiro's unwillingness to consent to other matters in this litigation, and his representations on the record that he has not yet reviewed the discovery, the United States does not presume that he will agree that certifications provided during discovery pursuant to Rule 902 of the Federal Rules of Evidence will obviate the need for the government to call records custodians as witnesses. Coordinating victim and witness travel for June 10, 2019 poses financial and logistical challenges for the government, given that nearly all witnesses will be traveling from outside of Miami, and that hotel and flight arrangements will need to be made and cleared with fiscal and administrative employees over whom the prosecution team has limited control. Moreover, several essential witnesses have already indicated that they have scheduling conflicts and periods of unavailability during June and much of July 2019. If the Court grants a continuance to August 5, 2019, the government will use this time to expeditiously prepare for trial by coordinating witness lodging and travel, preparing witnesses, marking and copying exhibits, and getting new prosecution team members up to speed on the case. These ends outweigh Defendant Shapiro's interest in proceeding to trial on June 10, 2019, a date that is even earlier than the expiry of the seventy days allotted under the Speedy Trial Act.

### ii. A Trial Date of August 5, 2019 Ensures Trial Will Occur before Expiry of Shapiro's Speedy Trial Time, As Approximately 55 Days Remain.

There are at least approximately 55 days remaining under Defendant Shapiro's speedy trial clock. Defendant Shapiro's initial appearance in the Southern District of Florida – the district in which the charges against him are pending – occurred on May 9, 2019 (D.E. 39). As such, the seventy-day clock under the Speedy Trial Act began running on May 9, 2019. *See* 18 U.S.C. §

9

3161(c)(1) (providing that when a defendant pleads not guilty to an indictment, his "trial date . . . shall commence within seventy days from the filing date (and making public) of the . . . indictment, or from the date the defendant has *appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs*.") (emphasis added); *see also United States v. Isaacson*, 752 F.3d 1291, 1300 (11th Cir. 2014) ("In a multiple defendant case, the speedy trial clock begins to run when the last codefendant is indicted or arraigned." (citation omitted)).

The Speedy Trial Act "recognizes that criminal cases vary widely and that there are valid reasons for greater delay in particular cases. To provide the necessary flexibility, the Act includes a long and detailed list of periods of delay that are excluded in computing the time [seventy days] within which trial must start." *United States v. Zedner*, 126 S.Ct. 1976, 1983 (2006). Among these periods of exclusion are any periods of delay "resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion," 18 U.S.C. § 3161(h)(1)(D), and any period of delay "reasonably attributable to any period, not to exceed thirty days, during which any proceeding concerning the defendant is actually under advisement by the court." *Id.* at § 3161(h)(1)(H). In general, these provisions are read together to exclude the period of time from the filing of a motion through the hearing on the motion (regardless of the length of time between the filing of the motion and the hearing date) plus up to thirty days more where a hearing is required to decide the motion. *See United States v. Harris*, 376 F.3d 1282, 1289-90 (11th Cir. 2004) (holding that the entire period between the filing of the motion and the conclusion of the hearing is excludable time regardless of whether any delay in holding the hearing is reasonable or not).[2]

---

[2] Even this thirty-day period after the hearing may be extended where the court requires supplemental briefing to decide the motion. If no hearing is required to decide the motion, then the time from the filing of the motion through the time the motion is fully submitted (at which time

10

The date of Defendant Shapiro's initial appearance in this district, May 9, 2019, is itself an excludable date under the Speedy Trial Act. *See U.S. v. Severdija*, 723 F.2d 791, 793 (11th Cir. 1984) (day that triggers running of speedy trial time limits excluded from the 70-day period); *accord United States v. Elkins*, 795 F.2d 919, 922 (11th Cir. 1986). In addition, on May 7, 2019, after Defendant Shapiro's arrest, but prior to his initial appearance in this District, the United States filed a motion for an extension of time to supply its initial discovery response (D.E. 34). That motion was pending until May 13, 2019, when the Court granted it at a hearing (D.E. 41). Thus, the four days that transpired during the pendency of the motion – between Defendant Shapiro's initial appearance on May 9, 2019, when the Speedy Trial Act clock began running in his case, and May 13, 2019, when the Court resolved the motion – should be excluded in computing the time within which the trial of the charged offenses must begin. 18 U.S.C. § 3161(h)(1)(D). Finally, because Defendant Shapiro filed a motion on May 28, 2019 (D.E. 58), which is still pending (and to which the United States intends to file a response by June 11, 2019), thus far, the only dates that can be counted under the speedy trial clock are May 14, 2019 through May 28, 2019. That is approximately 15 days. Hence, approximately 55 days remain – meaning that, even if the Court is not inclined to exclude additional time from Defendant Shapiro's speedy trial clock, an August 5, 2019 trial date would still ensure that his trial commences before the time expires.

## **LOCAL RULE 88.9 CERTIFICATION**

Pursuant to Rule 88.9 of the Local Rules of the Southern District of Florida, on June 4,

---

the motion is "under advisement" of the court) plus an additional thirty days (maximum) is excluded. *See United States v. Jones*, 601 F.3d 1247, 1256 (11th Cir. 2010) (explaining rules for tolling of speedy trial clock with respect to pretrial motions); *United States v. Elkins*, 795 F.2d 919, 922-23 (11th Cir. 1986) (discussing the methods of calculating excludable time for motions decided with and without a hearing). In either instance, if the court decides the motion before the thirty day period runs, then the clock starts again the day after the court decides the matter.

11

2019, counsel for the United States conferred with Ryan O'Quinn, Esq., counsel for Defendant Shapiro, who indicated that he opposes the relief sought herein.

## **CONCLUSION**

For the foregoing reasons, the government respectfully submits that the Court should reconsider its decision to sever Defendant Shapiro's trial from that of his two co-defendants, or in the alternative, grant the government's request for a continuance of his trial date. At the very least, before any trial begins, the government respectfully requests that the Court colloquy Defendant Shapiro and his counsel to determine, and make a record of, whether Defendant Shapiro's counsel has been able to adequately review discovery and prepare for trial in a manner that will enable him to effectively assist Defendant Shapiro. The answers to these questions should be considered as part of the analysis of what the interests of justice require.

Respectfully submitted,

ARIANA FAJARDO ORSHAN
UNITED STATES ATTORNEY

 /s/Lisa H. Miller
LISA H. MILLER
ROGER CRUZ
Assistant United States Attorneys
Court I.D. No. A5502054
99 N.E. 4th Street, 4th Floor
Miami, Florida 33132-2111
Tel: (305) 961-9312
Lisa.Miller@usdoj.gov