UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 19-CR-20178-CMA

UNITED STATES OF AMERICA

v.

**ROBERT SHAPIRO,**

       **Defendant.**

_____/

## PLEA AGREEMENT

The United States Attorney's Office for the Southern District of Florida ("this Office") and Robert Shapiro (hereinafter referred to as the "Defendant") enter into the following agreement:

1.    The Defendant agrees to plead guilty to Counts 1 and 10 of the Indictment. Count 1 charges the Defendant with conspiracy to commit mail fraud and wire fraud, in violation of Title 18, United States Code, Section 1349. Count 10 charges the Defendant with evasion of payment of federal income taxes, in violation of Title 26, United States Code, Section 7201. The Defendant acknowledges that he has read all of the charges against him contained in the Indictment and that the charges have been fully explained to him by his attorney.



2.    This Office agrees to seek dismissal of Counts 2 through 9 of the Indictment, as to this Defendant, at sentencing.

3.    The Defendant is aware that the sentence will be imposed by the Court after considering the advisory Federal Sentencing Guidelines and Policy Statements (hereinafter

"Sentencing Guidelines"). The Defendant acknowledges and understands that the Court will compute an advisory sentence under the Sentencing Guidelines and that the applicable guidelines will be determined by the Court relying in part on the results of a pre-sentence investigation by the Court's probation office, which investigation will commence after the guilty plea has been entered. The Defendant is also aware that, under certain circumstances, the Court may depart from the advisory sentencing guideline range that it has computed, and may raise or lower that advisory sentence under the Sentencing Guidelines. The Defendant is further aware and understands that the Court is required to consider the advisory guideline range determined under the Sentencing Guidelines, but is not bound to impose a sentence within that advisory range; the Court is permitted to tailor the ultimate sentence in light of other statutory concerns, and such sentence may be either more severe or less severe than the Sentencing Guidelines' advisory range. Knowing these facts, the Defendant understands and acknowledges that the Court has the authority to impose any sentence within and up to the statutory maximum authorized by law for the offense(s) identified in paragraph 1 and that the Defendant may not withdraw the plea solely as a result of the sentence imposed.



4. The Defendant also understands and acknowledges that the Court may impose a statutory maximum term of imprisonment of up to twenty (20) years as to Count 1, and up to five (5) years as to Count 10. These sentences of imprisonment may be run consecutively, for a total sentence of 25 years' imprisonment. In addition to any period of imprisonment the Court may also impose a period of supervised release of up to three (3) years to commence at the conclusion of the period of imprisonment, as to each count. In addition to a term of imprisonment and supervised release, as to Count 1, the Court may impose a fine of up to the greater of $250,000, pursuant to

18 U.S.C. § 3571(a)(3), or twice the pecuniary gain or loss caused by the offense, pursuant to 18 U.S.C. § 3571(d), and may order forfeiture and restitution. As to Count 10, the Court may impose a fine of up to $100,000 and costs of prosecution, and may order forfeiture and restitution.

5. The Defendant further understands and acknowledges that, in addition to any sentence imposed under paragraph 4 of this agreement, a special assessment in the amount of $100.00 will be imposed as to each count, for a total of $200.00. The Defendant agrees that any special assessment imposed shall be paid at the time of sentencing. If the Defendant is financially unable to pay the special assessment, the Defendant agrees to present evidence to this Office and the Court at the time of sentencing as to the reasons for the Defendant's failure to pay.

6. This Office reserves the right to inform the Court and the probation office of all facts pertinent to the sentencing process, including all relevant information concerning the offenses committed, whether charged or not, as well as concerning the Defendant and the Defendant's background. Subject only to the express terms of any agreed-upon sentencing recommendations contained in this agreement, this Office further reserves the right to make any recommendation as to the quality and quantity of punishment.



7. The Defendant shall provide the Probation Office and counsel for the United States with a full, complete and accurate personal financial statement **within forty-five (45) days** of adjudication of guilt as contemplated in this Plea Agreement. If the Defendant provides incomplete or untruthful statements in his personal financial statement, or fails to timely provide his personal financial statement, such action shall be deemed a material breach of this Plea Agreement and the United States shall be free to pursue all appropriate charges against the Defendant notwithstanding any agreements to forbear from bringing additional charges, or to

dismiss counts, otherwise set forth in this Plea Agreement.

8. This Office agrees that it will recommend at sentencing that the Court reduce by two levels the sentencing guideline level applicable to the Defendant's offense, pursuant to Section 3E1.1(a) of the Sentencing Guidelines, based upon the Defendant's recognition and affirmative and timely acceptance of personal responsibility. If at the time of sentencing the Defendant's offense level is determined to be 16 or greater, this Office will file a motion requesting an additional one level decrease pursuant to Section 3E1.1(b) of the Sentencing Guidelines, stating that the Defendant has assisted authorities in the investigation or prosecution of the Defendant's own misconduct by timely notifying authorities of the Defendant's intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the Court to allocate their resources efficiently. This Office, however, will not be required to make this motion and sentencing recommendation if the Defendant: (a) fails or refuses to make a full, accurate and complete disclosure to the probation office of the circumstances surrounding the relevant offense conduct and the Defendant's present financial condition; (b) is found to have misrepresented facts to the government prior to entering into this plea agreement; or (c) commits any misconduct after entering into this plea agreement, including but not limited to committing a state or federal offense, violating any term of release, or making false statements or misrepresentations to any governmental entity or official. 

9. The Defendant is aware that the sentence has not yet been determined by the Court. The Defendant is also aware that any estimate of the probable sentencing range or sentence that the defendant may receive, whether that estimate comes from the Defendant's attorney, this Office, or the probation office, is a prediction, not a promise, and is not binding on this Office, the

4

probation office or the Court. The defendant understands further that any recommendation that this Office makes to the Court as to sentencing, whether pursuant to this agreement or otherwise, is not binding on the Court and the Court may disregard the recommendation in its entirety. The defendant understands and acknowledges, as previously acknowledged in paragraph 3 above, that the Defendant may not withdraw his plea based upon the Court's decision not to accept a sentencing recommendation made by the Defendant, this Office, or a recommendation made jointly by the Defendant and this Office.

10. At the time of sentencing, the Defendant will be free to argue for a variance or departure from the advisory sentencing guidelines range, as deemed appropriate by his counsel. This Office will be free to seek any sentence, including a sentence within the advisory sentencing guidelines range, and up to the statutory maximum of twenty five (25) years' imprisonment.

11. This Office and the Defendant agree that, although not binding on the probation office or the Court, they will jointly recommend that the Court make the following findings and conclusions as to the sentence to be imposed:

(a) Base Offense Level:

The Defendant's base offense level is seven (7), per U.S.S.G. § 2B1.1(a)(1);

(b) Loss:

The Government asserts that the Defendant's offense level shall be increased by thirty (30) levels pursuant to U.S.S.G. § 2B1.1(b)(1)(O) because the actual loss caused to investors by the Defendant's offense conduct was more than approximately $250,000,000, but less than approximately $550,000,000;

The Defendant reserves the right to contest the loss amount at sentencing, and

asserts that the Defendant's offense level shall be increased by twenty-two (22) levels pursuant to U.S.S.G. § 2B1.1(b)(1)(L) because the Defendant's gain that resulted from the offense was more than $25,000,000, but less than $65,000,000;

(c) <u>Mass Marketing/Substantial Financial Hardship:</u>

The Defendant's offense level shall be increased by at least two (2) levels, pursuant to U.S.S.G. § 2B1.1(b)(2)(A), because the offense involved ten or more victims, and was committed through mass marketing, and/or resulted in substantial financial hardship to one or more victims. This Office reserves the right to argue that the Defendant's offense level may instead be increased by four (4) levels, pursuant to U.S.S.G. § 2B1.1(b)(2)(B), if the offense resulted in substantial financial hardship to 5 or more victims; and up to six (6) levels, pursuant to U.S.S.G. § 2B1.1(b)(2)(C), if the offense resulted in substantial financial hardship to 25 or more victims;

(d) <u>Violation of Any Prior Order:</u>

The Defendant's offense level shall be increased by two (2) levels pursuant to U.S.S.G. § 2B1.1(b)(9)(C), because the offense involved a violation of any prior, specific judicial or administrative order, injunction, decree, or process not addressed elsewhere in the guidelines;

(e) <u>Sophisticated Means:</u>

The Defendant's offense level shall be increased by two (2) levels pursuant to U.S.S.G. § 2B1.1(b)(10)(C) because the offense involved sophisticated means, and the Defendant intentionally engaged in or caused the conduct constituting sophisticated means;

6

(f) <u>Role Enhancement – Organizer/Leader</u>:

The Defendant's offense level shall be increased by four (4) levels pursuant to U.S.S.G. § 3B1.1(a), as the Defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive; and

(g) <u>Vulnerable Victims</u>:

The United States reserves the right to argue that Defendant's offense level shall be increased by two (2) levels pursuant to U.S.S.G. § 3A1.1(b)(1), as the Defendant knew, or should have known, that a victim of the offense was a vulnerable victim.

12. This Office and the Defendant have not reached any agreement as to the applicability or non-applicability of any specific offense characteristics or Chapter 3 adjustments other than as set forth in paragraphs 8 and 11 of this agreement.

13. The Defendant agrees, in an individual and any other capacity, to forfeit to the United States, voluntarily and immediately, all rights, title, and interest, pursuant to 18 U.S.C. § 981(a)(1)(C), to any property, real or personal, which constitutes or is derived from proceeds traceable to the offense of conviction. In addition, the Defendant agrees to forfeiture of substitute property pursuant to 21 U.S.C. § 853(p). The property subject to forfeiture includes, but is not limited to:

a. a forfeiture money judgment in at least the sum of $100 million in United States currency, which sum represents the value of the property subject to forfeiture, and in any event, not less than the amount of loss determined by the Court at sentencing;

b. directly forfeitable property, including, but not limited to:

(i) All assets on deposit in account number 4040774877 at Alpine Bank, held

in the name of Carbondale Basalt Owners LLC;

      (ii)    All assets on deposit in account number 8900003424 at Alpine Bank, held in the name of Davana Sherman Oaks Owners LLC;

      (iii)    All assets on deposit in account number 8970196989 at Alpine Bank, held in the name of Midland Loop Enterprises LLC;

      (iv)    All assets on deposit in account number 36044043514 at Capital One Bank, held in the name of Jeri Shapiro;

      (v)    All assets on deposit in account number 80-27009771 at East West Bank, held in the name of Davana Primrose Ventures LLC;

      (vi)    All assets on deposit in account number 20-27007984 at East West Bank, held in the name of Jeri L Shapiro;

      (vii)    All assets on deposit in account number 80-27010068 at East West Bank, held in the name of Reliance Marketing Solutions LLC;

      (viii)    All assets on deposit in account number 80-27010381 at East West Bank, held in the name of Settlement Depot LLC;

      (ix)    All assets on deposit in account number X96-267462 at Fidelity Cash Management, held in the name of Jeri Shapiro;

      (x)    All assets on deposit in account number 197148628 at Regions Bank, held in the name of Commercial Bridge Lenders LLC;

      (xi)    All assets on deposit in account number 2010131932 at Timberline Bank, held in the name of Golden Mesa Ventures LLC;

      (xii)    All assets on deposit in account number 2010131940 at Timberline Bank,

held in the name of Golden Primrose Ventures LLC;

(xiii) All assets on deposit in account number 157514954443 at US Bank, held in the name of Jeri Shapiro;

(xiv) One (1) 18-karat, white gold, bangle bracelet, with 550 round diamonds (12.50 carats) and 1,434 black diamonds (24.92 carats);

(xv) One (1) pair of 18-karat, white gold, drop earrings, with 1,344 round-cut diamonds (13.80 carats);

(xvi) One (1) pair of 18-karat, white gold, button earrings, with 162 round diamonds (13.89 carats);

(xvii) One (1) pair of 18-karat, white gold, drop earrings with 99 yellow sapphires (1.10 carats), 117 tsavorites (1.18 carats), 125 blue sapphires (1.38 carats), 124 blue diamonds (1.36 carats), 120 amethysts (1.24 carats), 120 pink sapphires (1.18 carats), and 125 orange sapphires (1.26 carats);



(xviii) One (1) pair of 18-karat, white gold, drop earrings with 22 emeralds (35.53 carats) and round-cut diamonds (7.18 carats);

(xix) One (1) pair of 18-karat, rose gold, golden pearl earrings with round-cut diamonds (.39 carat);

(xx) One (1) pair of 18-karat, rose gold, drop earrings with round-cut diamonds (.62 carat);

(xxi) One (1) pair of 18-karat, rose gold, drop earrings with rubies (38.90 carats);

(xxii) One (1) emerald and diamond ring;

(xxiii) One (1) platinum ring with certified Colombia emerald-cut emerald (9.54

carats), eight trapezoid-cut diamonds (2.09 carats), and 166 round-cut diamonds (1.42 carats);

(xxiv) One (1) pair of 18-karat, white gold earrings with multi-color pearls (11.8-15.5mm) and round-cut diamonds (.98 carat);

(xxv) One (1) platinum ring with oval-cut ruby (10.91 carats), two trapezoid diamonds (1.19 carats), and 70 round-cut diamonds (2.08 carats);

(xxvi) One (1) 18-karat, rose gold, bangle bracelet with round diamonds (1.50 carats);

(xxvii) One (1) 18-karat, white gold, bangle bracelet with round diamonds (1.5 carats);

(xxviii) One (1) pair of 14-karat, white gold, drop earrings with two black diamonds (61.81 carats), two icy grey diamonds (23.92 carats), two rose-cut diamonds (.36 carat), and 266 round diamonds (1.63 carats);



(xxix) One (1) 18-karat, yellow gold ring with 13 radiant-cut diamonds (13.83 carats); and

(xxx) One (1) 1969 Mercury convertible, bearing Vehicle Identification Number ("VIN") 9F92M565911.

c. substitute property, including, but not limited to:

(i) The wine collection stored at 4030 Longridge;

(ii) A cashier's check for $250,000 from East West Bank;

(iii) A Mortgage Payment made out of East West Bank of $399,867.67;

(iv) All assets on deposit in account number 226157004 at Regions Bank, held in the name of Lionshare Lending LLC; and

    (vi) Any outstanding balance of credits in JP Morgan Chase and Citicard credit cards.

14. The Defendant further agrees that forfeiture is independent of any assessment, fine, cost, restitution, or penalty that may be imposed by the Court. The Defendant knowingly and voluntarily agrees to waive all constitutional, legal, and equitable defenses to the forfeiture, including excessive fines under the Eighth Amendment to the United States Constitution. In addition, the Defendant agrees to waive: any applicable time limits for administrative or judicial forfeiture proceedings, the requirements of Fed. R. Crim. P. 32.2 and 43(a), and any appeal of the forfeiture.

15. The Defendant also agrees to fully and truthfully disclose the existence, nature and location of all assets in which the Defendant has or had any direct or indirect financial interest or control, and any assets involved in the offense of conviction. The Defendant also agrees to take all steps requested by the United States for the recovery and forfeiture of all assets identified by the United States as subject to forfeiture. This includes, but is not limited to, the timely delivery upon request of all necessary and appropriate documentation to deliver good and marketable title, consenting to all orders of forfeiture, and not contesting or impeding in any way with any criminal, civil or administrative forfeiture proceeding concerning the forfeiture.



16. In furtherance of the satisfaction of a forfeiture money judgment entered by the Court in this case, the Defendant agrees to the following:

    a. submit a financial statement to this Office upon request, within **ten (10) calendar days** from the request;

    b.    maintain all assets valued in excess of $10,000, and not sell, hide, waste, encumber, destroy, or otherwise devalue such assets without prior approval of the United States;

    c.    cooperate fully in the investigation and the identification of assets, including liquidating assets, meeting with representatives of the United States, and providing any documentation requested;

    d.    notify, within 30 days, the Clerk of the Court for the Southern District of Florida and this Office of: (i) any change of name, residence, or mailing address, and (ii) any material change in economic circumstances.

17.    The Defendant further understands that providing false or incomplete information about assets, concealing assets, making materially false statements or representations, or making or using false writings or documents pertaining to assets, taking any action that would impede the forfeiture of assets, or failing to cooperate fully in the investigation and identification of assets may be used as a basis for: (i) separate prosecution, including, under 18 U.S.C. § 1001; or (ii) recommendation of a denial of a reduction for acceptance of responsibility pursuant to the United States Sentencing Guidelines § 3E1.1. The Defendant further agrees that forfeiture is independent of any assessments, fines, costs, restitution orders, or any other penalty that may be imposed by the Court. 

18.    The Defendant acknowledges that because the offenses of conviction occurred after April 24, 1996, restitution is mandatory without regard to the Defendant's ability to pay and that

the Court must order the Defendant to pay restitution for the full loss caused by his criminal conduct pursuant to 18 U.S.C. § 3663A.

19. The Defendant is aware that Title 18, United States Code, Section 3742 and Title 28, United States Code, Section 1291 afford him the right to appeal the sentence imposed in this case. Acknowledging this, in exchange for the undertakings made by the United States in this plea agreement, the Defendant hereby waives all rights conferred by Sections 3742 and 1291 to appeal any sentence imposed, including any forfeiture or restitution ordered, or to appeal the manner in which the sentence was imposed, unless the sentence exceeds the maximum permitted by statute or is the result of an upward departure and/or upward variance from the advisory guideline range that the Court establishes at sentencing. The Defendant further understands that nothing in this agreement shall affect the government's right and/or duty to appeal as set forth in Title 18, United States Code, Section 3742(b) and Title 28, United States Code, Section 1291. However, if the United States appeals the Defendant's sentence pursuant to Sections 3742(b) and/or 1291, the Defendant shall be released from the above waiver of appellate rights. By signing this agreement, the Defendant acknowledges that the Defendant has discussed the appeal waiver set forth in this agreement with the Defendant's attorney. The Defendant further agrees, together with this Office, to request that the Court enter a specific finding that the Defendant's waiver of his right to appeal the sentence to be imposed in this case was knowing and voluntary.

20. The Defendant agrees to fully cooperate with the Internal Revenue Service ("IRS") in its civil examination, determination, assessment, and collection of income taxes related to the Defendant's personal income tax returns for the tax years 2000 through 2019, and any related corporate/entity tax returns, and further agrees not to conceal, transfer, or dissipate funds or

property that could be used to satisfy such taxes, penalties, and interest. The Defendant agrees to provide the IRS any documentation in the Defendant's possession and/or control requested by the IRS in connection with its civil examination, determination, assessment, and collection of such income taxes prior to sentencing. The Defendant further knowingly and voluntarily agrees to waive any statute of limitations with respect to assessment and collection of the Defendant's individual and corporate/entity tax liabilities concerning tax years 2000 through 2019.

21. Nothing in this agreement shall limit the IRS in its civil determination, assessment, and collection of any taxes, interest, and/or penalties that the Defendant may owe.

22. The Defendant agrees that the unpaid taxes that remain due and owing to the IRS, excluding interest and penalties, for his personal income taxes for the tax years 2000 through 2019 will be payable to the IRS as restitution. The amount due and owing is more than at least approximately **$6,061,134**, with the exact amount to be determined prior to sentencing. 

23. The Defendant agrees that any statements made by the Defendant to the IRS and/or in this agreement shall be admissible against the Defendant without any limitation in any civil or criminal proceeding and the Defendant stipulates to the authenticity and admissibility, in any civil or criminal proceeding, of any documentation provided by the Defendant to the IRS. The Defendant hereby waives any protection afforded by Rule 410 of the Federal Rules of Evidence and Rule 11(f) of the Federal Rules of Criminal Procedure with regard to any such statements and documentation. In the event that the Defendant withdraws from this agreement prior to pleading guilty and/or fails to fully comply with any of the terms of this plea agreement, the United States will, at its option, be released from its obligations under this agreement, but under no circumstances

shall the Defendant be released from the agreements and waivers made by the Defendant in this and the preceding three paragraphs.

24.     Defendant agrees that if he fails to comply with any of the provisions of this plea agreement, including the failure to tender it to the Court, makes false or misleading statements before the Court or to any agents of the United States, commits any further crimes, or attempts to withdraw the plea (prior to or after pleading guilty to the charges identified in paragraph one (1) above), this Office will have the right to characterize such conduct as a breach of this plea agreement. In the event of such a breach: (a) this Office will be free from its obligations under the plea agreement and further may take whatever position it believes appropriate as to the sentence and the conditions of the Defendant's release (for example, should the Defendant commit any conduct after the date of this plea agreement that would form the basis for an increase in the Defendant's offense level or justify an upward departure – examples of which include but are not limited to, obstruction of justice, failure to appear for a court proceeding, criminal conduct while pending sentencing, and false statements to law enforcement agents, the Probation Officer, or Court – this Office is free under this agreement to seek an increase in the offense level based on that post-agreement conduct); (b) the Defendant will not have the right to withdraw the guilty plea; (c) the Defendant shall be fully subject to criminal prosecution for any other crimes which he has committed or might commit, if any, including perjury and obstruction of justice; and (d) the Defendant waives any protections afforded by Section 1B1.8(a) of the Sentencing Guidelines, Rule 11 of the Federal Rules of Criminal Procedure and Rule 410 of the Federal Rules of Evidence, and this Office will be free to use against the Defendant, directly and indirectly, in any criminal or civil proceeding any of the information, statements, and materials provided by him pursuant to this plea



agreement, including offering into evidence or otherwise using the attached Stipulated Factual Proffer at a trial as to the remaining counts of the Indictment, or on other charges.

25.  In exchange for the undertakings herein, this Office agrees to enter into a non-prosecution agreement with the Defendant's wife, Jeri Shapiro ("Ms. Shapiro"). A copy of the non-prosecution agreement for Ms. Shapiro has been provided to the Defendant and his counsel prior to the change of plea hearing. The Defendant acknowledges and agrees that he has reviewed and discussed the terms of the non-prosecution agreement of his wife, Ms. Shapiro, with his attorney. Specifically, the Defendant understands that, in the non-prosecution agreement:

- This Office is agreeing not to prosecute Ms. Shapiro for federal criminal tax offenses for tax years 2013 through 2018 under Title 26 of the United States Code and/or under Title 18 of the United States Code, insofar as any such offenses may arise out of her individual federal income tax returns for those years or the corporate returns of her employer for those years, the "Woodbridge Group of Companies,"[1] or any other business or commercial

---

[1]  For the purposes of this agreement, the Woodbridge Group of Companies includes the following entities:

(a)  Woodbridge Group of Companies, LLC (d/b/a Woodbridge Wealth) ("Woodbridge") was a Sherman Oaks, California-based financial services company formed in 2014;

(b)  Woodbridge Mortgage Investment Fund 1, LLC, Woodbridge Mortgage Investment Fund 2, LLC, Woodbridge Mortgage Investment Fund 3, LLC, Woodbridge Mortgage Investment Fund 3A, LLC, Woodbridge Mortgage Investment Fund 4, LLC, Woodbridge Commercial Bridge Loan Fund 1, LLC, and Woodbridge Commercial Bridge Loan Fund 2, LLC (collectively, "Woodbridge Fund Companies") were Delaware companies formed between 2010 and 2015, all of which were created to act on behalf of Woodbridge;

(c)  WMF Management, LLC ("WMF") was a California company formed in 2012 and created to act on behalf of Woodbridge;

(d)  Woodbridge Structured Funding, LLC, a/k/a Woodbridge Structured Funding of Florida, LLC, ("WSF") was a Delaware company formed in 2009 and created to act on behalf of Woodbridge;

16

entity in which she has an ownership interest or that she operated on behalf of her husband, the Defendant, for his use and benefit.[2]

- This Office is further agreeing not to prosecute Ms. Shapiro for any other federal criminal fraud, money laundering, and tax offenses through the date of this plea agreement related to the Woodbridge Group of Companies and the additional entities named herein, and all related financial and business transactions, including but not limited to conduct committed by the Defendant and his co-conspirators, as outlined in the Indictment in this case.

- Ms. Shapiro is agreeing to consent to the forfeiture of specific assets and bank accounts identified by this Office.

- In the event that the Defendant at any time files a motion to withdraw from his guilty plea in this case, this Office will, at its option, be released from its obligations under the non-prosecution agreement with Ms. Shapiro, but under no circumstances shall Ms. Shapiro be released from her obligations under the non-prosecution agreement. Furthermore, in the event that: (a) Ms. Shapiro withdraws from the non-prosecution agreement; or (b) Ms. Shapiro fails to fully comply with any of the terms of the non-prosecution agreement; and/or the Defendant fails to fully comply with any terms of this plea agreement, this Office will, at its option, be released from its obligations under this plea agreement, as



---

(e)  Woodbridge Realty of Colorado ("Woodbridge Realty") was a Colorado company formed in 2014 and created to act on behalf of Woodbridge;

(f)  Mercer Vine, Inc. ("Mercer Vine") was a California corporation formed in 2014 and created to act on behalf of Woodbridge;

(g)  Riverdale Funding, LLC ("Riverdale") was a Delaware corporation formed in 2012 and created to act on behalf of Woodbridge; and

(h)  RS Protection Trust ("RS Trust") was created under Nevada law in 2013 and served as a holding trust for the assets of Woodbridge, WMF, WSF, and approximately two-hundred and seventy-two (272) other Woodbridge associated Delaware and Colorado companies.

[2]  These entities include, but are not limited to: 3X A Charm LLC; Archway Masters Construction LLC; Beeman Studio City LLC; Carbondale Basalt Owners LLC; Carbondale Primrose Ventures; Commercial Bridge Lending; Davana Primrose Ventures LLC; Davana Sherman Oaks Owners LLC; 204 Derby Ave LLC; Direct Insurance Source LLC; In Trend Staging LLC; Golden Mesa Ventures LLC; Golden Primrose Ventures LLC; JS Family Trust; Mesa Glen Enterprises LLC; Midland Loop Enterprises LLC; Moorpark Boca Funding LLC; Reliance Marketing Solutions LLC; Riverdale Funding LLC; Schwartz Media Buying Company LLC; Seaview Moorpark Real Estate Investment LLC; Settlement Depot LLC; Summit Sherman Oaks, LLC; and Stover Real Estate Partners LLC.

17

well as under the non-prosecution agreement, but under no circumstances shall Ms. Shapiro be released from her obligations under the non-prosecution agreement.

- The non-prosecution agreement with Ms. Shapiro shall only be binding on this Office, the United States Attorney's Office for the Southern District of Florida, and does not bind any other federal, state, local, or foreign prosecuting authority other than this Office. Nothing in the non-prosecution agreement shall preclude the Internal Revenue Service ("IRS") from commencing, continuing, or bringing civil tax proceedings of any kind and for any year with respect to Ms. Shapiro or any other individual, corporation, or entity.

26. This is the entire plea agreement and understanding between this Office and the Defendant. There are no other agreements, promises, representations or understandings.

ARIANA FAJARDO ORSHAN
UNITED STATES ATTORNEY
SOUTHERN DISTRICT OF FLORIDA

Date: 8/5/2019

By: _____
ROGER CRUZ
LISA H. MILLER
ASSISTANT UNITED STATES ATTORNEYS
SOUTHERN DISTRICT OF FLORIDA

Date: 8/5/19

By: _____
ROBERT SHAPIRO
DEFENDANT

Date: 8/5/19

By: _____
RYAN DWIGHT O'QUINN, ESQ.
ELAN GERSHONI, ESQ.
COUNSEL FOR ROBERT SHAPIRO